UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60039-CR-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DEANDRE SMITH,

    Defendant.
_____/

## DEANDRE SMITH'S SENTENCING MEMORANDUM

The defendant, DeAndre Smith, through counsel, hereby files this Sentencing Memorandum in the above-styled matter and as grounds in support thereof states as follows:

On July 2, 2018, Mr. Smith was convicted by a jury of all counts charged in the indictment in the above-styled case. Counts two, four, six and eight are convictions for violations of 18 U.S.C. 924(c). One reading of the statute would require the imposition of a seven year sentence on count two and a twenty five year sentence on counts four, six and eight and also require that the sentences on those counts be imposed consecutively to each other and consecutively to the sentences on counts one, three, five and seven. This sentence is inconsistent with the Due Process Clause of the Fifth Amendment to the United States Constitution, would

1

constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution and is not supported by the legislative history of the statute.

Here, the PSI computes a sentencing guideline range of 121 to 151 months imprisonment for the convictions on counts one, three, five and seven—the Hobbs Act robbery offenses (PSI at paragraph 99). However, counts two, four, six and eight would require the Court to impose a sentence of 984 months or more than eight times the sentence called for on counts one, three, five and seven. This is constitutionally impermissible. Moreover, the nine hundred and eighty four month sentence would have to be run consecutive to whatever sentence is imposed on the robbery counts which would equate to a sentence of between 1,105 to 1,135 months or 92 to 94 years in prison—a life sentence without parole equivalent. This sentence would amount to cruel and unusual punishment and as such would violate the Eighth Amendment to the Constitution.

> **The sentence of life imprisonment without the possibility of parole imposed on a 23 year old, previously diagnosed with a bipolar disorder at the age of 14, would violate the Eighth Amendment prohibition against cruel and unusual punishment.**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const., amend VIII. And, "[t]he Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" *Miller v. Alabama*, 132 S. Ct. 2485, 2463 (2012)

(quoting *Roper v. Simmons*, 543 U.S. 551, 560, 125 S. Ct. 1183 (2005)). "That right [] flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned' to both the offender and the offense." *Id.* (quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544 (1910)). "The concept of proportionality is central to the Eighth Amendment." *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010).

The Supreme Court has identified two general classifications of cases addressing the proportionality of sentence under the Eighth Amendment. *Graham*, 130 S. Ct. 2021. In the first classification, the court looks at the specific circumstances of the particular case to determine whether the sentence imposed is unconstitutionally disproportionate. *Id.* In the second classification, the court employs a categorical approach focusing on two subsets – the nature of the offense and the characteristics of the offender. *Id.* at 2021, 2022.

As to the first classification, the Court "must begin by comparing the gravity of the offense and the severity of the sentence." *Id.* at 2022 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680 (1991) (opinion of Kennedy, J.)). If that initial comparison leads to "'an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions." *Id.* "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.*

3

Here, if the Court imposes a sentence of 1,105 to 1,135 months the sentence will qualify as a life sentence without the possibility of parole. This sentence will be imposed under a federal sentencing system that came into being with the passing of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (SRA). The SRA created a new system of sentencing based on a determinate sentencing model under which the individual sentenced "must serve the full length of his term [and] parole and the United States Parole Commission are abolished." *United States v. Scoggins*, 880 F.2d 1204, 1208 (11th Cir. 1989). Deandre Smith's potential sentence of 1,105-1,135 months equates to 92-94 years. In reality then, Deandre's sentence will in fact be a life sentence without the possibility of parole. *See, e.g., Henry v. State*, 175 So. 3d 675, 679, 680 (Fla. 2015); *Gridine v. State*, 175 So. 3d 672, 673 (2015).

The initial comparison of the severity of the offenses here--committed by a 23 year old struggling with a Bipolar disorder--with the severity of the potential sentence, a 92-94 year sentence (a life term really) without the possibility of parole, presents an extraordinary case and leads to a clear "inference of gross disproportionality." *See United States v. Farley*, 607 F.3d 1294, 1343-44 (11th Cir. 2010).

This initial inference is confirmed by a comparison of sentences in the Eleventh Circuit Court of Appeals, the Southern District of Florida and sentences for similar offenses nationally. The Sentencing Commission studies the length of imprisonment by primary offense category for each fiscal year. For fiscal year 2017, it reviewed a total of 58,091 sentences nationwide, 5,537 in the Eleventh Circuit and 2,084 in the Southern District of Florida for defendants sentenced to a term of imprisonment. For those 58,091 sentences nationwide, the mean sentence for all offenses was 51 months imprisonment and the median sentence was 27 months. In the Eleventh Circuit the mean was 66 months imprisonment and the median 40. For the Southern District of Florida the mean sentence of imprisonment was 59 months imprisonment and the median was 34 months. Critically, for *robbery* the national sentence was a mean of 77 months imprisonment and a median of 60 months. For *robbery* in the Eleventh Circuit the mean sentence was 72 months imprisonment with a median of 57 months. For **robbery i**n the Southern District of Florida the mean sentence was 68 months imprisonment and the median was 54 months. Even more critically are the sentences for *murder.* In 2017, there were 72 cases of *murder* nationwide (only one in the Eleventh Circuit). The mean sentence was 224 months imprisonment and the median was 180 months. In addition, in 2107, there were 62 cases of **kidnapping/hostage taking** nationwide. The mean sentence was 230 months imprisonment and the median was 210 months. U.S.S.C. Statistical Information Packet, Fiscal Year 2017, Table 7, available

at www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2017/fls17.pdf (last visited September 4, 2017).

By contrast, Mr. Smith's potential sentence of 1,105-1,135 months' imprisonment, when compared to all sentences nationwide, sentences in the Eleventh Circuit, sentences in the Southern District of Florida and sentences for robbery, murder and kidnapping/hostage taking nationwide, the Eleventh Circuit and in the Southern District of Florida, even in the aggregate, is grossly disproportional.  Mr. Smith's sentence is 22 times higher (a 2,200 % increase) over the mean sentence and 40 times higher (a 4,000 % increase) than the median sentence nationwide.  Critically, Smith's sentence is 14 times higher (a 1,400 % increase) than the mean sentence for *robbery* nationwide and 18 times higher (a 1,800 % increase) than the median sentence for *robbery* in the nation.  Moreover, Smith's potential sentence is 15 times higher (an increase of 1,500 % increase) than the mean sentence for *robbery* in the Eleventh Circuit and 19 times higher (an increase of 1,900 %) than the median sentence for *robbery* in the Eleventh Circuit. For *robbery* in the Southern District of Florida, Smith's potential sentence is 18 times higher (a 1,800 % increase) than the mean sentence for *robbery* and 32 times higher (a 3,200 % increase) over the median for *robbery.*  Even more critically, Smith's potential sentence is 5 times higher (a 500 % increase) than that for the mean sentence for *murder* nationwide and 6 times higher (a 600 % increase) than the median.  Finally, Smith's potential sentence is 5 times higher (a 500 % increase) than the mean sentence for *kidnapping/hostage taking* nationwide as well as 5

6

times higher (a 500 % increase) than the median. This simple comparison shows that the potential sentence for Mr. Smith is grossly disproportionate to all other sentences in the nation, in the Eleventh Circuit and in the Southern District of Florida, including those for robbery, murder and kidnapping/hostage taking.

## 18 U.S.C. 924(c) is Unconstitutional as Applied to Smith

The gross disproportionality of Smith's potential sentence, outlined above, is the product of the consecutive sentencing scheme pursuant to 18 U.S.C. 924(c) as it relates to counts two, four, six and eight. The above statistical analysis, as set forth in *Graham v. Florida,* thereby demonstrates that 18 U.S.C. 924(c) is unconstitutional on its face but importantly as applied to Smith. The "gross disproportionality" criteria outlined in *Graham* confirms that 18 U.S.C. 924(c) violates the Eighth Amendment to the Constitution in that it amounts to cruel and unusual punishment. While the Eleventh Circuit has upheld the constitutionality of 18 U.S.C. 924(c) in *United States v. Hamblin,* 911 F. 2d 551 (11th Cir. 1990) and *United States v. Grinnell,* 915 F.2d 667 (11th Cir. 1990), those decisions did not address the cruel and unusual Eighth Amendment analysis set forth in *Graham.* Smith has performed that analysis here and demonstrated the Eighth Amendment violation.

Moreover, the continued viability of the "stacking" provision of 924(c) is in issue. While upholding the provision, concurring judges of the First Circuit in *United States v. Rivera-Ruperto,* 884 F. 3d 25 (1st Cir. 2018), questioned whether Congress considered or imagined the results of the stacking provision when after

7

surveying the legislative history they stated, " No mention was made in the ensuing floor debate of the feature of this statute that results in the imposition of mandatory life without parole sentences for conduct at all like Rivera's—namely, the second or subsequent provision at issue here. 114 Cong. Rec. 22231 (1968). Nor was any mention made of the ***draconian*** results that could follow from the "stacking" of 924(c) sentences, let alone of the Eighth Amendment implications of doing so when multiple 924(c) convictions are handed down at ***a single trial*** or across a pair of trials and thus before the defendant has served time for any of them and demonstrated that punishment will not deter him from future criminal conduct." *Id.* at 42 (emphasis added). Moreover, the concurrence continued, "it is less clear to me that Congress would have been fully aware of just how minimal the conduct could be that would result in a forever sentence under 924(c). As I have explained, 924(c)'s scope is notoriously ambiguous, the statute encompasses even inchoate crimes, and it requires the "stacking" of mandatory sentences even for related conduct that results in multiple convictions at a single trial due to prosecutorial choice to divvy up the conduct. Thus in light of how *Allyene* suggests proportionality review must now proceed, there is additional reason to doubt that Congress, in enacting this sentencing regime, contemplated the full implications of its mandate, even if that mandate does encompass a range of cases involving more serious conduct that Congress no doubt had in view." *Id* at 46.

Indeed, action by both the Congress and the Sentencing Guidelines Commission underscore the point. Legislation in the current Congress—The

Sentencing Reform and Corrections Act contains a provision that would eliminate the stacking of 924(c)s. This follows the Sentencing Commission's Report recommending the same. https://www.ussc.gov/research/congressional-reports/2011-report-congress-mandatory-minimum-penalties-federal-criminal-justice-system.

### Esteban Santiago, Eloyn Ingraham/Andre Delancy/Bernard Forbes

Moreover, comparison of Smith's potential sentence to recent sentences received by defendants here in the Southern District of Florida demonstrate the gross disproportionality of a sentence of life imprisonment without parole for Smith. Esteban Santiago murdered five people at the Ft. Lauderdale airport and shot and maimed 12 others (*United States v. Esteban Santiago,* 17-06003-BLOOM). On August 20, 2018 he received a sentence of life imprisonment without parole—the same as the potential sentence for Deandre Smith. This severe and unconscionable result is wrong and cannot stand. In Broward Circuit Court, Eloyn Ingraham, Andre Delancy and Bernard Forbes were convicted after a trial on May 13, 2018 of murdering Broward Sheriff Deputy Brian Keith Tephford and shooting Broward Sheriff Deputy Corey Carbocci five times (*State of Florida v. Ingraham, Delancy, Forbes,* 06-20315CF10). On July 16, 2018 they received a sentence of life imprisonment without parole—the same as the potential sentence for Deandre Smith. This severe and unconscionable result is wrong and cannot stand.

### Theodore J. Kaczynski, Zacarias Moussaoui, Omar Abdel Rahman and Jarred Lee Loughner

Indeed, comparison of Smith's potential sentence to sentences received by other defendants in federal court demonstrate the gross disproportionality of life imprisonment without parole for Smith. Theodore J. Kaczynski (the Unabomber) killed three people and maimed 23 others. He was sentenced to life imprisonment without parole in 1998—the same as the potential sentence for Deandre Smith. Zacarias Moussaoui (the 20th hijacker) was convicted of conspiring to kill United States citizens in the 911 attack. On May 4, 2006, he was sentenced to life imprisonment without parole—the same sentence as the potential sentence for Deandre Smith. Omar Abdel Rahman (the Blind Sheikh) was convicted of the first World Trade Center Bombing in 1993 which killed 6 people and injured 1000. In 1996 he was sentenced to life imprisonment without parole—the same potential sentence as Deandre Smith. On January 8, 2011, Jarred Lee Loughner killed 6 people including District Judge John Roll and severely wounded United States Representative Gabriel Giffords. In November 2012, Loughner was sentenced to life imprisonment without the possibility of parole—the same potential sentence as Deandre Smith. For Deandre Smith to receive the same sentence as the above defendants is unconscionable and cannot stand. These cases clearly demonstrate the gross disproportionality of a potential sentence of life imprisonment without the possibility of parole for Deandre Smith.

**Sentences for Federal Capital Homicide Prosecutions July 2018**

Moreover, attached hereto as Defense Exhibit A is the list of Federal Capital Defendants Not Authorized by Attorney General Sessions—July 17, 2018. https://fdprc.capdefnet.org/ This list comprises the federal capital defendants where the Attorney General chose not to pursue the death penalty. As a result, the maximum sentence for each of these defendants charged with capital homicide is life imprisonment without the possibility for parole—the same potential sentence as Deandre Smith.

The comparison analysis conducted above clearly and unequivocally demonstrates that a sentence of life imprisonment without the possibility of parole for Deandre Smith is grossly disproportionate, and thus his potential sentence is cruel and unusual in violation of the Eighth Amendment. *See Graham*, 130 S. Ct. at 2022.

Application of the categorical classification also serves to confirm the unconstitutional nature of this potential punishment imposed for Deandre Smith. Although the categorical classification was historically applied in the death penalty context, the Supreme Court in Graham applied that classification to a term-of-years sentence. *Graham*, 130 S. Ct. at 2022. Specifically, the Supreme Court held that the "Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit a homicide." *Id.* at 2034. Although Deandre Smith does not fit neatly into that category, the categorical prohibition announced in *Graham*, and the reasoning behind that prohibition, serve to reinforce the

11

conclusion that a life without parole sentence for a 23 year old previously diagnosed with Bipolar disorder violates the Eighth Amendment.

As noted above, the potential sentence described above is in fact a life sentence without the possibility of parole.  Federal sentencing law will require Deandre to serve the full term of his imprisonment, a physiological impossibility, and, by virtue of the elimination of parole, there is no realistic opportunity for him to obtain release before the end of that term.  It is also very clear that Deandre did not commit a homicide.

Deandre Smith had a close relationship with his brother Oneil who was 12 years older. When Deandre was 14 he went to visit Oneil in the hospital who was ill suffering from kidney failure.  Upon entering the hospital room alone Deandre discovered that his brother had died.  This event had a traumatic and profound impact on Deandre and appears to be the beginning of the mental illness he would struggle with.  As noted in the addendum to the PSI, at age 14 he was diagnosed by Dr. Bhadresh Parikh with a Bipolar disorder.  The PSI at paragraph 87 also reflects attention deficit disorder, schizophrenia and Bipolar disorder. Important too, the PSI notes at paragraph 62 that Deandre has eight criminal history points which are arrived at with the following convictions: two misdemeanor convictions for possession of cannabis, misdemeanor battery, a conviction for possession of alcohol by a person under 21 and a conviction for aggravated assault with a deadly weapon and possession of cocaine.  Noticeably absent are any convictions for robbery or the use of a firearm.  Important too, the above convictions have Deandre in criminal

history category IV. Further, he is not a career offender and does not fall into any recidivist sentencing provision.

In *Graham*, the Court was dealing with a teenager who was just a month shy of his 18th birthday and who, along with other teens, was involved in an armed home invasion in which the teen held a gun to a victim. The same teen had previously been convicted as an adult for a violent burglary that resulted in the beating of a restaurant manager in the head with a metal bar. 130 S. Ct. at 2018-2020. The Florida court sentenced the teen to life. *Id.* at 2020. Florida, like the federal government, abolished parole so that "a life sentence gives the defendant no possibility of release unless he is granted executive clemency." *Id.*

In adopting a categorical prohibition on such a sentence, the court examined "the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question," and "whether the challenged sentencing practice serves legitimate penological goals." *Id.* at 2026. The Court noted that juveniles have a lessened culpability and are less deserving of the most severe punishments. *Id.* (citing *Roper v. Simmons*, 543 U.S. 551, 569, 125 S. Ct. 1183 (2005)). Deandre was not much older than the defendant in *Graham*. In addition, Deandre's diagnosis of Bipolar disorder at age 14 raises similar culpability questions as addressed in *Graham*.

Examining the nature of the offense as an added part of the calculus, the Court drew a distinction between murder and other offenses. The Court then concluded that, "when compared to an adult murderer, a juvenile offender who did

13

not kill or intend to kill has a twice diminished moral culpability." *Id*. at 2027. Deandre, did not commit a homicide and has a substantial mental health condition that impacts his culpability.

The Court then noted that "life without parole is 'the second most severe penalty permitted by law.'" *Id*. (quoting *Harmelin*, 501 U.S. at 1001, 111 S. Ct. 2680). Life without parole "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the convict, he will remain in prison for the rest of his days." *Id*. (internal quotations omitted). A sentence of life without parole is an even harsher sentence for a young person, such as Deandre, because the young person "will on average serve more years and a greater percentage of his life in prison" than an older offender. *Id.* at 2028.

Moreover, life imprisonment without the possibility of parole is the de facto most severe punishment for adults because the death penalty is so rarely imposed. *Miller,* 567 U.S. at 477, n. 7. Indeed, life imprisonment without the possibility of parole is "typically reserved" for "rapists and murderers." *Graham* 130 S. Ct. at 2040 (Chief Justice Roberts concurring).

Turning to penological justifications, the Court held that "[w]ith respect to life without parole juvenile non-homicide offenders, none of the goals of penal sanctions that have been recognized as legitimate – retribution, deterrence, incapacitation, and rehabilitation – provides an adequate justification." *Id*. (internal citations omitted). That same reasoning applies with equal force here. A

life without parole sentence unjustly denies Deandre the ability "to demonstrate growth and maturity' during his imprisonment. *See id*. In fact, Courts have noted that more recent studies of the human brain suggest that immaturities associated with juveniles continue into the 20s. *See Horsley v. Trame*, 808 F.3d 1126, 1133 (7th Cir. 2015) (citing scholarly research); *Commonwealth v. Bredhold*, No. 14-CR-161, (Ky. Cir. Ct., Fayette Cir., Aug. 1, 2017) (declaring Kentucky death penalty unconstitutional for defendants under age 21 based in part on recent research into the late development of the adolescent brain).

Based on the foregoing, it is clear that a sentence of life imprisonment without the possibility of parole for Deandre Smith is grossly disproportionate to other sentences for robbery, murder and kidnapping/hostage taking and will violate the Eighth Amendment to the Constitution. As a result, Smith objects to any sentencing pursuant to 18 U.S.C. 924(c) that results in the sentence referenced above because that sentence amounts to cruel and unusual punishment.

## Due Process

Deandre Smith also argues that the stacking of 924(c) sentences violates the Due Process Clause of the Fifth Amendment to the United States Constitution. The 924(c) sentencing scheme deprives Smith of his right to receive individualized treatment at sentencing pursuant to 18 U.S.C. 3553(a). Further, Congress' decision to impose this sentencing scheme was arbitrary and capricious. Smith acknowledges contrary Eleventh Circuit precedent in *Hamblin* and *Grinnell,* cited above.

### *Booker* Variance—Overrepresented Criminal History

Finally, Smith requests that the Court grant a *Booker* variance. The "History and Characteristics of the Defendant" Prong of 18 U.S.C. 3553(a) supports this request as the criminal history category IV assigned to Mr. Smith substantially over-represents the seriousness of his criminal history pursuant to U.S.S.G. 4A1.3(b)(1). Smith's criminal history category IV is arrived at through the total of eight criminal points. Of the eight points, six are accumulated by the misdemeanor convictions (although only four are counted). Those misdemeanors are: two possessions of cannabis, battery, and possession of alcohol by a person under 21. Smith gets two criminal history points for being on probation for aggravated assault and possession of cocaine at the time of the instant offense. Accordingly, criminal history category IV substantially over-represents Smith's criminal history and he requests that the court grant a variance to a criminal history category that more accurately depicts his criminal history.

In conclusion, Deandre Smith hereby objects to sentencing pursuant to the scheme set forth in 18 U.S.C. 924(c) for the reasons stated herein.

WHEREFORE, the Deandre Smith files that sentencing memorandum.

        Respectfully submitted,

        MICHAEL CARUSO
        FEDERAL PUBLIC DEFENDER

By: *s/Timothy M. Day*
        Timothy M. Day
        Assistant Federal Public Defender
        Florida Bar No. 360325
        1 East Broward Boulevard, Suite 1100
        Fort Lauderdale, Florida  33301
        (954) 356-7436
        (954) 356-7556 (fax)
        Timothy_Day@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on September 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        *s/Timothy M. Day*
        Timothy M. Day